**Avard BLOUIN**

v.

**CITY OF ROCKLAND, et al.**

Supreme Judicial Court of Maine.

Argued Jan. 8, 1982.

Decided Feb. 22, 1982.

Richard M. Goldman (orally), Downeast Law Offices, P. A., Augusta, for plaintiff.

John L. Knight (orally), Knight, Chalmers & Brannan, Rockland, for defendant.

Before McKUSICK, C. J., and GODFREY, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

CARTER, Justice.

The City of Rockland (City) appeals from a judgment of the Superior Court, Knox County, ordering it to provide rental payment assistance to the plaintiff, Avard Blouin, pursuant to its general assistance program. 22 M.R.S.A. §§ 4450–4508. We affirm the judgment.

As permitted by 26 M.R.S.A. § 1193(6), the Maine Employment Security Commission disqualified the plaintiff from receiving unemployment compensation benefits from July 18, 1980, until January 31, 1981. This disqualification followed a finding that, in his application for such benefits in April 1980, the plaintiff had made a false statement knowing it to be false.

In December 1980, the plaintiff applied to the City for general assistance in the form of rental payments. The defendant, Kathryn I. Fogg, the City's Welfare Director, denied the application on the basis of section III(C)(2) of the City's general assistance program: "Each applicant has a responsibility at the time of the initial application and continuing thereafter ... to apply for and utilize any benefits or resources that will reduce or eliminate the need for general assistance." Because the plaintiff was not eligible for unemployment compensation benefits under 26 M.R.S.A. § 1193(6), the Welfare Director concluded that section III(C)(2) of the City's general assistance program operated to disqualify the plaintiff for general assistance benefits. Following this denial of his request for benefits, the plaintiff invoked his right to a fair hearing. *See* 22 M.R.S.A. § 4507; Rockland General Assistance Ordinance § VII. The City's Fair Hearing Authority affirmed the Welfare Director's decision, citing both section III(C)(2), *supra*, and section IV(C) which provides in part that "[a]pplicants who are denied categorical assistance for reason of their refusal ... to cooperate in securing support payments, and who would otherwise be eligible for categorical assistance, will not be eligible for general assistance except when the denial of categorical assistance is pending appeal."

The plaintiff then commenced an action in the Superior Court, Knox County, pursuant to M.R.Civ.P. 80B. *See* 22 M.R.S.A. § 4507; Rockland General Assistance Policy § VII(E). The court ruled that the plaintiff did not refuse to cooperate in applying for categorical assistance and thus could not be disqualified under section III(C)(2) or

section IV(C) of the City's program. From this judgment, the defendants appeal.

■ A general assistance program is "a service administered by a municipality for the immediate aid of persons who are unable to provide the basic necessities essential to maintain themselves or their families." 22 M.R.S.A. § 4450(2). Because the underlying purpose of the general assistance program is to insulate the truly needy from financial destitution, a municipality may look no further than the applicant's actual immediate need in determining eligibility for such relief. § 4504(3)(A); *Beaulieu v. City of Lewiston*, Me., 440 A.2d 334, 345 (1982). Once the applicant is found to have immediate need for relief, the municipality must provide general assistance to satisfy the applicant's immediate needs.

■ Properly divining such statutory considerations, the Superior Court found in this instance that the pertinent provisions of the City's general assistance program did not operate to disqualify the plaintiff from receiving rental payment assistance because, through his own fault, he had been disqualified from receiving categorical assistance from the Maine Employment Security Commission for a limited period of time. We too construe the City's ordinances so as to render them to be in compliance with the legislative mandate of 22 M.R.S.A. §§ 4450–4508. *See State v. Davenport*, Me., 326 A.2d 1, 6 (1974).

■ Section III(C)(2) of the City's general assistance program, *quoted supra*, imposes on the applicant a duty to seek benefits and resources other than general assistance in order to alleviate those needs which otherwise constitute the basis of eligibility for general assistance. Under the express terms of section III(C)(2), however, this obligation arises "at the time of the initial application and continu[es] thereafter."

Here, the plaintiff did not apply for general assistance until early December 1980; he had made the false statement to the Maine Employment Security Commission in

April 1980 and was disqualified from receiving unemployment benefits in July 1980. The City does not claim that the plaintiff failed to apply for and utilize unemployment compensation benefits *after* he had requested rental payment assistance.[1] Rather, it asserts only that unemployment compensation benefits *would* have been available to the plaintiff, thus at least reducing his need for general assistance, had he not been disqualified by the Maine Employment Security Commission in July 1980. This point, however, is inapposite to the requirement of section III(C)(2) that an applicant for general assistance seek other forms of financial relief *after* he requests general assistance. The plaintiff's ineligibility for unemployment compensation benefits, arising prior to his application for general assistance, does not constitute a post-application failure to seek and utilize other benefits and resources. This plaintiff has thus not fallen short of fulfilling the responsibilities created in section III(C)(2) of the City's program.[2]

The Fair Hearing Authority also denied rental payment assistance to the plaintiff on the basis of section IV(C) of the City's general assistance program. In full, this provision reads:

> C. *Eligibility for Categorical Assistance.* Eligibility for receipt of categorical assistance will not prevent eligibility for receipt of general assistance. *Applicants who are denied categorical assistance for reason of their refusal* to assign rights to support or *to cooperate in securing support payments, and who would otherwise be eligible for categorical assistance, will not be eligible for general assistance* except when the denial of categorical assistance is pending appeal. In such instances the applicant's dependents

will not be prevented eligibility for general assistance.

> Money received from categorical assistance programs will be included as part of income in determining need. (See below, Elibility [sic]: Determination of Need). When an application for categorical assistance has been made, requests for general assistance which may be met by the retroactive payment will not be paid by the city; for those needs which are immediate and may not be delayed, reimbursement may be sought by the city from the recipient of such aid. Applicants whom the general assistance administrator believes are eligible for any other form of public assistance must apply for that assistance within one week after being advised to do so by the administrator.

(Emphasis added.) The defendants apparently rely on the underscored language of this provision as the basis for denying rental payment assistance to the plaintiff. This language, however, operates to disqualify only those whose "refusal ... to cooperate in securing *support payments*" leads to ineligibility for categorical assistance.

 In order to gain an understanding of this particular section, reference must be made to the ordinance in its entirety. *See Freeport Minerals Co. v. Inhabitants of Bucksport*, Me., 437 A.2d 642, 644 (1981). This approach is particularly useful to determine the meaning of a phrase or term, here, such as "support," not defined in the enactment. *See State v. Philbrick*, Me., 402 A.2d 59, 62 (1979). From the whole of the City's general assistance program, it is clear that "support" is not intended to encompass unemployment compensation benefits. First, the general assistance ordinance defines "categorical assistance" to include "all state and federal income maintenance programs." Maine's Employment Security

---

1. Indeed, because of the disqualification, such an application obviously would have been fruitless.

2. We note that the terms of section III(C)(2) do not specify the sanctions to be imposed on the applicant who fails to satisfy its requirements.

Because we find here that the plaintiff-applicant has not violated this provision, we need not consider whether a blanket denial of general assistance may lawfully be issued upon such a failure. *Cf. Beaulieu v. City of Lewiston*, Me., 440 A.2d 334, 345 (1982).

Law creates such an income maintenance program, under this ordinance, because its stated purpose is to reduce the economic "burden which may fall upon the unemployed worker, his family and the entire community." 26 M.R.S.A. § 1042. *See also Therrien v. Maine Employment Security Commission,* Me., 370 A.2d 1385, 1389 (1977). Thus, by the definitional language of the Rockland Ordinance that program is classed as categorical assistance.[3] Further, while the program does not expressly define "support," the use of the term in the City's general assistance ordinance demonstrates that it is intended to mean alimony and child support payments. Rockland General Assistance Ordinance § V(D)(1)(c). Nowhere do the provisions of the ordinance suggest that "support" is intended to be given any broader meaning. The term "support" thus carries a meaning distinct from that of the term "categorical assistance," and consequently the two are not used interchangeably in section IV(C) to identify the same type of resource. The inclusion of a definition of "categorical assistance" signifies that the drafters of the program knew the meaning of categorical assistance and that if those drafters had intended to disqualify applicants who did not cooperate in securing *categorical assistance* rather than support payments, they would have so provided. We thus attribute to the drafters of the City's ordinance an intent to disqualify from receiving general assistance under section IV(C) only those who fail to secure alimony or child support when the receipt of those resources constitutes a condition to eligibility for some form of categorical assistance.[4]

The plaintiff cannot be found ineligible to receive rental payment assistance under section IV(C), because he has not refused "to cooperate in securing support payments," as we construe the meaning of the term "support" used in the City's general assistance ordinance.[5]

Because the parties have not raised at any point in this action the issue of whether a retroactive award of general assistance benefits is a proper one under 22 M.R.S.A. §§ 4450–4508, the matter is waived, and we decline to consider it. *See Harrington v. Inhabitants of Garland,* Me., 381 A.2d 639, 642 (1978).

The entry is:

Judgment affirmed.

All concurring.

---

3. We intimate no opinion as to whether Maine's employment security program may properly be considered "categorical assistance" under any body of law other than the Rockland Ordinance.

4. Even as we construe the requirements imposed by § IV(C) on the applicant, a further issue arises as to whether these conditions to eligibility may attach to events preceding the application for general assistance. The narrow facts presented by this case, resulting in our conclusion that the § IV(C) disqualification provisions do not apply to this plaintiff, do not require us to decide this issue. In this context, however, we note our clear holding in *Beaulieu* that the sole criterion which a municipality may consider in determining eligibility for general assistance is that of actual immediate need. *See* discussion *supra* at 1009.

5. We note that the Superior Court found error in the City's denial of general assistance to the plaintiff because it found that the plaintiff had not refused to cooperate in securing categorical assistance. As we conclude here, section IV(C) of the City's program disqualifies only those who refuse to cooperate in securing *support* payments and are thereby rendered ineligible for categorical assistance. Despite this error in construction and analysis, the lower court reached the correct result, and we therefore uphold its determination. *Allstate Ins. Co. v. Lyons,* Me., 400 A.2d 349, 352 (1979).