James GILMAN

v.

CITY OF LEWISTON, et al.

Supreme Judicial Court of Maine.

Argued March 6, 1987.
Decided April 22, 1987.

Linda J. Rogers (orally), Pine Tree Legal Assistance, Inc., Bangor, for plaintiff.

David L. Brandt (orally), Rocheleau, Fournier & Lebel, P.A., Lewiston, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

Plaintiff James Gilman appeals from an order of the Superior Court (Androscoggin County) affirming a denial of general assistance by the City of Lewiston. The denial was based on findings that plaintiff caused the termination of his employment and that he failed to report earnings received from employment. We conclude that neither finding constitutes a lawful basis for denying general assistance and, therefore, we vacate the judgment of the Superior Court.

The record reflects that plaintiff, a regular recipient of general assistance, made application on January 24, 1986, for general assistance for food and rent. Four days later the director of general assistance denied his request for the reasons that he had failed to report his earnings from two days of employment and that he had terminated his employment at one establishment and had caused his dismissal from employment at Progressive Bakery. A fair hearing was held at plaintiff's request to review the denial of assistance. At the hearing, the assistance director testified that plaintiff had worked at two establishments in Auburn for a total of two days during the prior month and failed to report the income on his application. Further, the director testified that plaintiff quit his job at one establishment because his hands were

swelling[1] and that he caused his own termination at Progressive Bakery by being abusive to two female workers. The fair hearing officer upheld the denial of assistance and found that plaintiff had willfully caused termination of his employment at the bakery because of dissatisfaction with the work shift, and had failed to report income. Following an unsuccessful appeal to the Superior Court, plaintiff filed the present appeal.

## I.

In a series of decisions issued in 1982 we ruled that need was the exclusive criterion for eligibility for relief under the then current general assistance law. *See, Blouin v. City of Rockland,* 441 A.2d 1008 (Me. 1982); *Page v. City of Auburn,* 440 A.2d 363 (Me.1982); and *Beaulieu v. City of Lewiston,* 440 A.2d 334 (Me.1982). All three cases dealt with the validity of an ordinance imposing requirements or restrictions in addition to those imposed by statute. The opinion in *Page* is of particular relevance to the present case. That case involved an ordinance declaring an applicant ineligible if the applicant voluntarily quit employment or voluntarily caused his own unemployment. We reasoned that such an ordinance was prohibited by the statutory scheme and struck it down. *Page v. City of Auburn,* 440 A.2d at 364.

In 1983 the Maine Legislature responded to the *Page* decision and enacted the following work requirement currently codified at 22 M.R.S.A. § 4316–A (Supp.1986):

> An applicant is ineligible for assistance for 60 days if the municipality establishes that the person, without just cause:
>
> . . . . .
>
> E. Quits work after an initial application for assistance.

The City of Lewiston responded to the 1983 legislative change by enacting the following ordinance:

> After being granted assistance at the time of initial application, applicants will be considered ineligible for further assistance if they, without just cause:
>
> . . . . .
>
> (f) voluntarily quit work. Within the meaning of "voluntary quit" is an applicant causing his/her own unemployment by being intentionally fired. Applicants who are employed are expected to remain on the job and not quit employment except for just cause. (22 M.R.S.A. § 4301.8, 4316 3–A.1)

Lewiston, Me. General Assistance Ordinance § 13–45(f). It is important to note that although the ordinance encompasses the statutory provision, it resurrects the feature of the *Page* ordinance that equates "causing a discharge" with "quitting."

In enacting the 1983 amendments, the Legislature reaffirmed need as the sole criterion for an initial application but sought to create additional eligibility conditions for continuing assistance. The statement of fact accompanying the 1983 and 1985 legislation contains the following:

> The new draft authoriz[ed] municipalities to establish by ordinance, standards in addition to need. These standards include requiring applicants to fulfill work requirements, and to use other available resources to reduce their dependence on the general assistance program.

L.D. 1764, Statement of Fact (111th Legis. 1983).

> In 1983, the 111th legislature adopted the policy that the first time people applied for general assistance, need would be the only eligibility condition; thereafter, as a recipient, people would have to meet all other eligibility conditions including, requirements to work, make use of available resources, use income for basic necessities and not commit fraud. Section 4 retains that policy. . . .

L.D. 786, Statement of Fact (112th Legis. 1985).

■ The statute and the legislative history clearly reflect that the Legislature intended to limit the impact of *Page* by declaring an applicant to be ineligible if he

---

1. At a later point in her testimony the director acknowledged that the first termination of employment was "legitimate" because of the physical complaint.

quit work after an initial application. The City of Lewiston argues that the ordinance does not expand upon the statute but merely effectuates the intendment of the statute. The City suggests that "being intentionally fired" is the functional equivalent of "quitting work." We disagree. The statutory formulation requiring that an applicant quit work, can be satisfied only by showing an affirmative and unequivocal act on the part of the applicant. Undoubtedly, the Legislature recognized that assistance recipients are prone to a variety of employment difficulties. By enacting a limited exception employing a precise standard, the Legislature left little need for the evaluation of an applicant's conduct. By contrast, the ordinance provision permits disqualification to be inferred strictly from an objective evaluation of events. If an applicant is discharged, a fact-finder is authorized to determine whether the conduct causing the discharge was committed for the purpose of producing the discharge. The scope of the ordinance is significantly broader than the language of the statute. In this case, the fair hearing officer did not find that plaintiff quit work in the terms of the statute, but rather, relying on the ordinance, found that he had willfully caused the termination of his own employment. We conclude that section 4316–A(1)(E) does not authorize the disqualification of those who are discharged for misconduct, but rather is confined to those who have unmistakably manifested their indifference to circumstance by quitting their employment.

## II.

■ The fair hearing officer also upheld the denial of assistance on the ground that plaintiff had failed to report income. In this regard, the record reflects that during December, 1985, plaintiff received assistance. When he applied for assistance on December 13, the City learned that he was engaged in an employment training program and had held one job for a day but had to leave because of hand swelling. Because his prospects for job placement were thought to be good, he received assistance without an assignment to work fare. De-

spite his prospects, plaintiff worked only one day at Progressive Bakery on December 16, 1985. Sometime between the middle of December and the middle of January plaintiff received approximately $60.00 for the two days employment. When he next applied for general assistance on January 24, 1986, he failed to report the income on his application. Plaintiff testified that the income had been spent and he honestly forgot. The director of assistance learned on January 27, that plaintiff had worked and issued the denial on the next day based on plaintiff's failure to report income.

In upholding the denial of assistance, the fair hearing officer relied on the following provisions of the ordinance:

Responsibilities of the applicant at the time of application

The applicant has the following responsibilities at the time of each application:

(a) to provide accurate, complete and current information concerning his/her income, resources, assets, and employment;

Lewiston, Me., General Assistance Ordinance, Art. II, § 13–25(a).

The applicant is required to provide all information necessary for the administrator to determine if he/she is eligible for assistance. When available information is inconclusive or conflicting regarding a material fact that (sic) is necessary to determine eligibility, the administrator will inform the applicant what further information is needed. In order to be considered inconclusive or conflicting the information on the application must be inconsistent with other information on the application, previous applications or other information received by the administrator... .

. . . . .

The applicant will be given the opportunity to provide the necessary information prior to the expiration of the twenty-four (24) hour time period within which the administrator must act on the application. If all the necessary information has been provided and the applicant is determined to be eligible, assistance will

be granted. If the applicant does not provide the required information needed within the twenty-four (24) hour period, and the administrator cannot determine the applicant's eligibility, the application will be denied on the basis of insufficient information and documentation. The administrator will notify the applicant that he/she may reapply when he/she can complete the application... .

Lewiston, Me., General Assistance Ordinance, Art. IV, § 13–62, paras. 4, 7. The ordinance provisions are consistent with the underlying statute which states in relevant part:

When available information is inconclusive or conflicting regarding a fact which is material and necessary to determine eligibility, the applicant will be advised as to what questions remain. To be considered inconclusive or conflicting, the information on the application must be inconsistent with statements made by the applicant, inconsistent with other information on the application or previous applications, or inconsistent with information received by the overseer.

22 M.R.S.A. § 4309(2) (Supp.1986).

 In the present case the assistance director issued a denial without informing plaintiff of the conflicting information or the need for further information with regard to his earnings. The City of Lewiston argues that plaintiff's failure to report warrants a denial regardless of the City's failure to inform. We disagree. The obligation to inform the applicant of conflicting information is an important component of the general scheme of the statute requiring that information be gathered from the applicant. In an effort to avoid stigmatizing applicants, section 4309 provides as follows:

The overseer shall seek the facts necessary to establish eligibility first from the applicant. Facts sought from other sources, with the exception of public records, shall be gathered only with the knowledge of the applicant.

**2.** Both the statute, 22 M.R.S.A. § 4315 (Supp. 1986) and Lewiston, Me., General Assistance Ordinance, Art. IV, § 13–63, authorize a sixty day disqualification if an applicant knowingly

Contrary to the conclusion reached by the fair hearing officer it is apparent that neither the ordinance nor the statute authorizes a denial or a disqualification for a failure to report income. Both obligate the applicant to provide accurate information, but when an inconsistency develops it is expected that the assistance director will inform the applicant of the inconsistency and the need for further information. Only in the event that the applicant fails to comply with the request for further information does the ordinance authorize denial. Such a procedure was not followed in this case. If plaintiff had been informed of the inconsistency as required by the ordinance, he would have had the opportunity to correct his omission and have his eligibility determined on an accurate set of facts. In any event, disqualification is not authorized for a mere failure to report income.[2]

The entry is:

Judgment vacated.

Remanded to the Superior Court with instructions to vacate the order denying assistance and enter judgment requiring payment of the benefits for which application was made.

All concurring.

and willfully makes a false representation of a material fact. In the present case, plaintiff was not charged with making a false representation and the denial was not based on such a charge.